UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

ARNALDO HERNANDEZ GUERRERO,

Petitioner,

v.

CURTIS J. ALJETS, and IMMIGRATION AND NATURALIZATION SERVICE,

Respondents.

Civil No. 01-227 (ADM/SRN)

**REPORT AND RECOMMENDATION**

Arnaldo Hernandez Guerrero , Jefferson County Detention Center, 102 West "C" Street, Waurika, Oklahoma, 73573, Petitioner, pro se.

Lonnie F. Bryan, Assistant United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN, 55415, for Respondents.

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of Arnaldo Hernandez Guerrero for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He claims that he is being detained by the United States Immigration and Naturalization Service, (INS), in violation of his rights under federal law and the Constitution. Respondents have filed a return, (Docket Nos. 9-11), contending that the petition should be dismissed.

The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition should be DISMISSED WITH PREJUDICE.

MAR 06 2002
FILED_____
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD_____
DEPUTY CLERK_____

## I. BACKGROUND[1]

Petitioner is a Cuban alien who came to the United States in 1980 during the "Mariel Boatlift."[2] Like most other Mariel Cubans, Petitioner was not granted legal admission to this country when he arrived here. Instead, he was allowed into the country on "parole," and he has always been, and still is, classified as a "parolee." See 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.12 ("Parole determinations and revocations respecting Mariel Cubans"). As a result, Petitioner is considered to be an "excludable" or "unadmitted" alien. Even though Petitioner has been physically present in this country for more than twenty years, he has the same legal status as a person stopped at the border while trying to enter the United States. See Sierra v. I.N.S., 258 F.3d 1213, 1218 (10th Cir.) ("[a]lthough he has been physically present in the United States for more than twenty years, Sierra [a Mariel Cuban] is 'legally considered to be detained at the border and hence as never having effected entry into this country'"), cert. denied, 122 S.Ct. 676 (2001), quoting Gisbert v. Attorney General, 988 F.2d 1437, 1440 (5th Cir.), amended by, 997 F.2d 1122 (5th Cir. 1993).

After he was paroled into the United States, Petitioner went to Wisconsin. He apparently lived there for several years, and was frequently arrested for minor criminal offenses. In 1983, he moved to New Jersey, where he continued to be repeatedly arrested

---

[1] The factual background of this case comes primarily from the "Respondent's Response To Habeas Corpus Petition, Motion To Dismiss, And Memorandum Of Law." (Docket No. 9.) Petitioner has not filed any opposition to that Response, nor has he otherwise expressed any disagreement with Respondents' account of the relevant facts.

[2] A brief synopsis of the Mariel Boatlift can be found at Caballero v. United States, 145 F.Supp.2d 550, 552 (D.N.J. 2001).

for offenses such as theft, receiving stolen property and shoplifting. Because of his criminal record, Petitioner was taken back into custody by the INS in 1985, and he was thereafter detained in various federal prison facilities for nearly three years.

In 1988, Petitioner was re-paroled and came to Minnesota. In November of that year, he was arrested in Minneapolis and charged with second degree burglary. He was convicted of that offense, but fled to New York before he was sentenced. Petitioner was later arrested in New York, (where he had been using a false name), on charges of robbery and possession of stolen property. Eventually, Petitioner returned to Minnesota, where he was sentenced to 27 months in prison for his 1988 burglary conviction.

By 1991, Petitioner was free again, but in early 1992 he was arrested in St. Paul on state law drug charges. He was convicted for selling cocaine and sent to state prison for 44 months. When he completed his sentence in early 1995, he was turned over to the INS again. The INS revoked Petitioner's parole again, and commenced exclusion proceedings against him, based (at least in part) on his two Minnesota criminal convictions. A hearing was held, and on February 2, 1995, an Immigration Judge found Petitioner to be excludable. Petitioner did not appeal that decision. Following the entry of his exclusion order, Petitioner remained in INS custody pending his return to Cuba. Although the INS has determined that Petitioner should be removed from the United States to Cuba, that has not yet occurred, because Cuba will not accept him.

Because he is a Mariel Cuban, Petitioner is entitled to an annual review of his continuing post-exclusion detention, pursuant to the "Cuban Review Plan" set forth at 8 C.F.R. § 212.12. Under that plan, the INS can free Petitioner from confinement if that appears to be appropriate. He can be re-paroled, subject to whatever terms and conditions

the INS might deem proper.

The INS reviewed Petitioner's status pursuant to the Cuban Review Plan in 1995, 1996 and 1997, and determined on each of those occasions that he should not be re-paroled. In 1998, however, the INS concluded that Petitioner could be released on parole again, and in early 1999 he was freed one more time.

A few months later though, Petitioner was arrested yet again – this time for threatening to kill his girlfriend with a kitchen knife. He was convicted of making terroristic threats and placed on probation. As a result, the INS terminated his parole status, and took him back into custody. His parole status was reviewed again in August 2000, but he was found to be ineligible for parole at that time.

It appears that Petitioner has been detained by the INS continuously since December 1999, and neither Petitioner nor Respondents have suggested that he is likely to leave INS custody in the foreseeable future. When he filed his current habeas corpus petition, he was being held by the INS at the Minnesota Correctional Facility in Rush City, Minnesota. Just recently, however, Petitioner informed the Court that he has been moved to a detention facility in Oklahoma.[3]

It is the prospect of indefinite detention that prompted Petitioner to seek federal habeas corpus relief. He is not currently challenging the validity of his exclusion order; instead, he is challenging the INS's authority to keep him incarcerated until Cuba agrees

---

[3] Petitioner's current habeas corpus petition can still be heard and decided here in Minnesota, notwithstanding his transfer to another state. See McCoy v. United States Board of Parole, 537 F.2d 962, 966 (8th Cir. 1976) (the federal court for the district where a prisoner was incarcerated when he filed his habeas corpus petition does not lose jurisdiction when the prisoner is transferred to another district while his petition is still pending).

to take him back – regardless of how long it might take for that to occur. His present habeas petition lists three specific grounds for relief: (1) that his continuing INS detention violates the constitutional guaranty of due process; (2) that he is being subjected to double jeopardy; and (3) that he has been deprived of his constitutional right to equal protection. In a separate supplemental petition, (Docket No. 2), Petitioner further contends that his Eighth Amendment rights are being violated.

Respondents acknowledge that Petitioner's claims can properly be raised and entertained in a § 2241 habeas corpus proceeding, (see I.N.S. v. St. Cyr, 121 S.Ct. 2271, 2278-87 (2001); Zadvydas v. Davis, 121 S.Ct. 2491, 2497-98 (2001)), but they contend that all of his current claims should be dismissed on the merits. The Court agrees.

## II. DISCUSSION

### A. Due Process Claim

In his first ground for relief, Petitioner claims that his ongoing INS detention violates the Fifth Amendment's due process clause. Similar due process claims have been raised by many other Mariel Cubans who are being detained while awaiting exclusion, and those claims have been rejected in virtually every case. See e.g., Hoyte-Mesa v. Ashcroft, 272 F.3d 989 (7th Cir. 2001); Sierra v. I.N.S., supra; Carrera-Valdez v. Perryman, 211 F.3d 1046 (7th Cir. 2000); Guzman v. Tippy, 130 F.3d 64 (2d Cir. 1997); Barrera-Echavarria v. Rison, 44 F.3d 1441 (9th Cir.) (en banc), cert. denied, 516 U.S. 976 (1995); Gisbert v. Attorney General, supra.[4]

---

[4] One notable exception is Rosales-Garcia v. Holland, 238 F.3d 704 (6th Cir. 2001). Respondents have vigorously argued that Rosales-Garcia was wrongly decided, and it now appears they are right, because on December 10, 2001, the Supreme Court vacated the Sixth Circuit's decision in Rosales-Garcia. 122 S.Ct. 662 (2001). Therefore, Petitioner

The courts that have previously denied the due process claims of Mariel Cubans facing indefinite detention have relied primarily on Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206 (1953). In that case, the Supreme Court rejected the constitutional claims of an inadmissible alien named Ignatz Mezei who was facing indefinite INS confinement after being stopped at Ellis Island while attempting to enter the United States.[5] The United States would not admit Mezei into this country, and no other country would accept him, so he was stuck on Ellis Island, with no place to go. He filed a habeas corpus petition, which eventually ended up in the Supreme Court.

The Supreme Court rejected Mezei's constitutional objections to his indefinite detention on Ellis Island. The Court emphasized that Mezei never gained entry to the United States, and he was therefore not entitled to the constitutional protections afforded to aliens who have gained entry (legally or otherwise) to this country. Id. at 212 ("[i]t is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law... [citations omitted] [b]ut an alien on the threshold of initial entry stands on a different footing"). Because Mezei was an excludable alien, the Court concluded, the Constitution provided him no protection from indefinite detention. Id. at 214-15. The Court further concluded that "'[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" Id. at 212, quoting United States

---

cannot even rely on that one case to support his due process claim.

[5] Actually, the alien in Mezei was attempting to re-enter the country. He had lived here for approximately twenty-five years before traveling to Rumania to visit his dying mother. When he tried to return to the United States, he was stopped at the border and subjected to indefinite detention. 345 U.S. at 208-09.

ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 544 (1950).

Mezei has been followed in the more recent cases that have considered the constitutional claims of Mariel Cubans facing indefinite detention pending enforcement of their exclusion orders. In Barrera-Echavarria, for example, the Ninth Circuit Court of Appeals held that excludable aliens do not "have a constitutional right to be free from detention, even for an extended time." 44 F.3d at 1449. The Fifth Circuit has likewise concluded that, pursuant to Mezei, excludable Cubans have no due process protection from indefinite detention. Gisbert, 988 F.2d at 1443-44. In Carrera-Valdez, the Seventh Circuit plainly stated that "an excludable alien may be detained indefinitely when his country of origin will not accept his return." 211 F.3d at 1048. The Second Circuit used equally blunt language in Guzman: "Indefinite detention of excludable aliens does not violate due process." 130 F.3d at 66, citing Mezei, 345 U.S. at 212.

Just last year, the U.S. Supreme Court indicated in Zadvydas v. Davis, supra, that Mezei is -- at least for now -- still good law. 121 S.Ct. at 2501 ("we need not consider the aliens' claim that subsequent developments have undermined Mezei's legal authority"). In Zadvydas, the Court considered the indefinite detention of two resident aliens, i.e., aliens who, unlike Petitioner, had gained admission into the United States. Although the Court expressed serious doubts about the constitutionality of allowing resident aliens to be detained indefinitely while waiting to be removed from the United States, (121 S.Ct. at 2502), the Court also emphasized that, pursuant to Mezei, excludable aliens, e.g., Mariel Cubans, do not enjoy the same type of constitutional protections against indefinite

detention. Id. at 2500.[6]

In Zadvydas, the Supreme Court concluded that the resident alien petitioners could not be detained by the INS indefinitely. However, Zadvydas is distinguishable from the present case in two critical respects. First, as just mentioned, Zadvydas involved removable resident aliens, not excludable aliens. The Supreme Court made it quite clear that, in light of Mezei, excludable aliens facing indefinite detention would have no viable constitutional claim.[7]

Zadvydas is also distinguishable from the present case, because the aliens in that case were being detained under a different statute from the one applicable to Petitioner here. The aliens in Zadvydas had been ordered out of the country after the immigration laws had been changed by the 1996 enactment of the Anti-terrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act, ("IIRIRA"); and those aliens were therefore being detained pursuant 8 U.S.C. § 1231(a)(6). In Zadvydas, the Court concluded that § 1231(a)(6) does not authorize the INS to detain aliens indefinitely, and that the Attorney General therefore lacked the statutory authority to continue to detain the Zadvydas aliens after it became clear that there was "no

---

[6] The Court explained in Zadvydas that:

> "Although Mezei, like the present cases, involves indefinite detention, it differs from the present cases in a critical respect.... [Mezei] was 'treated,' for constitutional purposes, 'as if stopped at the border.'... [Citation omitted] And that made all the difference."

121 S.Ct. at 2500.

[7] This point seems to be reinforced by the Supreme Court's rejection of the Sixth Circuit's opinion in Rosales-Garcia. See footnote 4, supra.

significant likelihood of removal in the reasonably foreseeable future." 121 S.Ct. at 2505. The instant Petitioner is in a different position, because he was ordered out of the country before AEDPA and IIRIRA were enacted, and his detention is therefore based on the older, pre-1996, law – more specifically, 8 U.S.C. § 1226(e).[8] Section 1226(e), unlike the new § 1231(a)(6), does authorize the indefinite detention of excludable aliens who have been convicted of "aggravated felonies." Gisbert, 988 F.2d at 1445-47; Carrera-Valdez, 211 F.3d at 1048. See also Rosales-Garcia, 238 F.3d at 716 (noting that "[m]any circuits, including the Second, Third, Fifth, Seventh, Ninth, and Tenth Circuits have found former § 1226(e) to authorize the Attorney General to detain indefinitely an excludable alien who has been convicted of an aggravated offense," and concluding that § 1226(e) "clearly authorizes the Attorney General to detain an excludable alien indefinitely"), vacated on other grounds, 122 S.Ct. 662.[9] Because Petitioner was convicted of an aggravated felony,[10] and his case is

---

[8] Petitioner's case is governed by the old law pursuant to § 309(c)(1) of the IIRIRA, which provides that, as a general rule, the old law should be applied to exclusion/deportation proceedings commenced before April 1, 1997 -- the effective date of the IIRIRA. See Afolayan v. I.N.S., 219 F.3d 784, 787 (8th Cir. 2000) ("IIRIRA generally does not apply to deportation proceedings initiated prior to April 1, 1997); Carrera-Valdez, 211 F.3d at 1048 (former § 1226(e) "applies to persons who... were subject to an order of exclusion when the new legislation took full effect on April 1, 1997"). See also Rosales-Garcia, 238 F.3d at 715 (finding former § 1226(e) to be applicable to habeas petitioner whose exclusion order was entered before April 1, 1997), vacated on other grounds, 122 S.Ct. 662. Petitioner's exclusion order was entered in February 1995, which was well before IIRIRA became law, so his case is governed by § 1226(e) – not § 1231(a)(6).

[9] Rosales-Garcia presumably was vacated because the Supreme Court found the Sixth Circuit's constitutional analysis to be faulty in light of Zadvydas. Because Zadvydas did not address the old pre-AEDPA, pre-IIRIRA statute, (i.e., § 1226(e)), there is no reason to believe that the Supreme Court disagreed with the Sixth Circuit's understanding of that statute.

[10] Petitioner's 1992 sale-of-cocaine conviction constitutes an "aggravated felony" as defined at 8 U.S.C. § 1101(a)(43)(B), because it was "drug trafficking crime" under 18

governed by the old law, (i.e., § 1226(e)), the Attorney General does have the statutory authority, (as well as the constitutional authority), to detain him indefinitely.[11]

In sum, because Petitioner is an excludable alien, rather than a resident alien who has been ordered to be removed, his constitutional right to due process is limited by the Supreme Court's decision in Mezei. According to Mezei, the due process clause does not give Petitioner any constitutional protection from indefinite detention. He is entitled only to whatever protections the federal statutes and administrative regulations may provide him. This means that he is entitled to have his case considered pursuant to the Cuban Review Plan, (8 C.F.R. § 212.12), but that is all. Guzman, 130 F.3d at 66 ("[a]n excluded alien's rights are determined by the procedures established by Congress and not by the due process protections of the Fifth Amendment"); Gisbert, 988 F.2d at 1442 ("excludable aliens are entitled only to those due process rights as are provided by law"). See also Hoyte-Mesa, 272 F.3d at 992 (noting that the length of a Mariel Cuban's detention "now depends on the outcome of his annual parole review"). The record shows that Petitioner has been receiving regular reviews under the Cuban Review Plan, and he has therefore

---

U.S.C. § 924(c) -- i.e., it was a felony and it was punishable under the federal Controlled Substances Act, (21 U.S.C. § 801 et seq.). See Herrera-Soto v. I.N.S., No. 98-2979 (8th Cir. 1999), 1999 WL 272422 (unpublished opinion).

[11] Because Petitioner's case is governed by the old statute, it is distinguishable from Borrero v. Aljets, 178 F.Supp.2d 1034 (D.Minn. 2001). In that case, the Court concluded that Zadvydas was applicable to a Mariel Cuban habeas petitioner, because he was being detained under the post-AEDPA, post-IIRIRA statute, namely § 1231(a)(6) -- which applies to not only resident aliens, but also to excludable aliens. Id. at 1043-44 ("[a]s the Court in Zadvydas has concluded that Congress did not intend § 1231 to permit indefinite detention of removable aliens, this Court concludes the statute must be given the same construction when it is applied to excludable/inadmissible aliens"). The reasoning of Borrero is inapplicable here, because the instant Petitioner is being detained pursuant to a different statute – one that does authorize indefinite INS detention of excludable aliens.

been receiving all the due process to which he is entitled.

B. Double Jeopardy Claim

In his second ground for relief, Petitioner contends that his continuing detention by the INS, after the completion of his state prison sentence, violates the Constitution's double jeopardy clause. Petitioner's double jeopardy argument is not well-explained. As far as the Court can tell, he is claiming that his current INS detention should be viewed as an additional "punishment" for his various state criminal offenses. He apparently believes that the INS is incarcerating him for state criminal offenses for which he has already fully served his court-ordered prison sentences, and that he is now being punished again, in violation of the double jeopardy clause.

Petitioner's double jeopardy argument must be rejected, because it is based on the erroneous premise that his current INS detention is actually a form of punishment for a crime. In fact, Petitioner is not presently being punished for any crime. He is simply being detained, administratively, pending the consummation of his exclusion order. He is not being confined to punish him for a crime; he is being confined only to ensure that he will be available for removal from the United States as soon as the Cuban government (or some other government) agrees to accept him.

The reasons for denying Petitioner's double jeopardy claim are well-explained in Chukwurah v. United States, 813 F.Supp. 161, 167 (E.D.N.Y. 1993):

> "Generally, the constitutional prohibition of double jeopardy is offended where a criminal defendant is subjected to a second prosecution for the same offense after conviction or acquittal and where a criminal defendant is subjected to multiple punishments for the same offense. See generally Illinois v. Vitale, 447 U.S. 410, 415... (1980). The current detention of petitioner by the INS does not amount to punishment and hence does not implicate the constitutional protection against double jeopardy....

> A deportation proceeding is not a criminal prosecution but is a civil action collateral to any criminal proceeding. See United States v. United States Currency in the Amount of $228,536, 895 F.2d 908, 915 (2d Cir.), cert. denied, 495 U.S. 958... (1990); United States v. Hernandez, 588 F.2d 346, 351-52 (2d Cir.1978); Kandiel v. United States, 964 F.2d 794, 796 (8th Cir.1992); [additional citations omitted].... Hence, deportation proceedings do not constitute a 'second prosecution.'
>
> Further, the consequence of deportation and its attendant hardship on the deported alien, including interim incarceration, are not forms of punishment. See Linnas v. INS, 790 F.2d 1024, 1030 (2d Cir.1986), cert. denied, 479 U.S. 995...(198[6]); see generally Mahler v. Eby, 264 U.S. 32, 39... (1924). Rather, the power to expel an alien convicted of crimes in this country is a fundamental sovereign attribute exercised by the government's political departments; decisions to expel an alien reflect concerns about national interests, not a desire to punish the expelled alien. Fiallo v. Bell, 430 U.S. 787, 794-96... (1977).
>
> Thus, notwithstanding the fact that the deportation proceeding and petitioner's current detention stem from his conviction, he is not being subject to multiple penalties for the same offense. Hence neither the deportation proceeding nor the attendant incarceration of petitioner offend double jeopardy principles."

The foregoing discussion is fully applicable here, and fully explains why Petitioner's double jeopardy claim must be rejected.

C. Equal Protection Claim

In his third ground for relief, Petitioner claims that the INS is violating the equal protection clause, because his current INS detention is "racially biased." This claim must be rejected, because Petitioner has offered no facts to support it.

If Petitioner could show that he is being treated differently from other similarly-situated aliens, solely because of his race, ethnicity or national origin, then he might have a colorable equal protection argument. In fact, however, Petitioner has offered nothing more than his own self-serving conclusory allegations to support his equal protection claim. Reported federal caselaw clearly suggests that convicted criminal aliens of all races and

nationalities face the prospect of INS detention pending the consummation of an INS exclusion or deportation order.[12] Resident aliens who have been ordered out of this country may be treated somewhat differently than excludable aliens such as Petitioner, (see discussion at pp. 6-8, supra), but that is because of their legal status, not their race or national origin. Petitioner's equal protection claim must be summarily rejected, because he has offered no reason to believe that he is being treated differently from other excludable criminal aliens of other races or nationalities who are waiting to be expelled from the United States.

D. Eighth Amendment Claim

Finally, Petitioner seems to be claiming that his ongoing INS detention violates the Eighth Amendment's prohibition against "cruel and unusual punishment." This claim must be rejected because Petitioner is not currently being detained as punishment for a crime; the INS is merely holding him so that it can carry out the exclusion order that is pending against him. As explained in Avramenkov v. I.N.S., 99 F.Supp.2d 210, 218 (D.Conn. 2000):

> "[T]he Eighth Amendment is not implicated absent punishment. Thus, there can be no constitutional violation when a Petitioner's detention is not punitive but instead is incidental to a legitimate purpose.... [P]re-removal detention [of an alien] is not punishment because it is incidental to the government's power to control its borders."

See also, Villa-Arreola v. Ashcroft, No. 00-56089 (9th Cir. 2001) 2001 WL 1329031 (unpublished opinion) at *1 ("[a]ppellant's double jeopardy and cruel and unusual punishment claims must... fail because both depend on the imposition of some criminal

---

[12] In Zadvydas, for example, one of the aliens facing indefinite INS detention was Asian and the other was European.

punishment [and] [r]emoval, though harsh in some cases, is not punishment"); Sengchanh v. Lanier, 89 F.Supp.2d 1356, 1358 (N.D.Ga. 2000) (alien's Eighth Amendment challenge fails as that amendment "is not implicated absent punishment," and "pre-deportation detention is not punishment because it is incidental to the government's power to control its borders"). In short, because Petitioner's present detention "did not result from the conviction for a crime, the Eighth Amendment is inapplicable." Equan v. U.S. I.N.S., 844 F.2d 276, 279 (5th Cir. 1988).

## III. CONCLUSION

For the reasons discussed above, the Court finds that Petitioner is not entitled to a writ of habeas corpus on any of the claims advanced in his petition. It will therefore be recommended that this action be dismissed with prejudice.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Docket No. 1), be DISMISSED WITH PREJUDICE.

Dated: March 6, 2002

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief

in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.